FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 22, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALEXANDER C. II,<br><br>                              Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                              Defendant. | NO:  2:17-CV-00003-FVS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13 and 14.  This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Jeffrey R. McClain.  The Court has reviewed the administrative record and the parties' completed briefing and is fully informed.  For the reasons discussed below, the

ORDER ~ 1

court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and

**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Alexander Cole II protectively filed for supplemental security income on February 15, 2008, alleging an onset date of January 1, 1996. Tr. 113. Benefits were denied initially (Tr. 74-77) and upon reconsideration (Tr. 81-84). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ James W. Sherry on January 6, 2010. Tr. 39-71. Plaintiff was represented by counsel and testified at the hearing. *Id*. On February 11, 2010 the ALJ denied benefits. Tr. 10-27. On June 1, 2012, the United States District Court for the Eastern District of Washington granted Plaintiff's motion and remanded the case for further proceedings. Tr. 849-82. Plaintiff subsequently appeared for a hearings before ALJ Larry Kennedy on November 12, 2015 and May 19, 2016. Tr. 740-825. Plaintiff was represented by counsel and testified at the hearings via telephone from Airway Heights Correctional Facility. *Id*. The ALJ denied benefits on October 28, 2016. Tr. 668-702. The matter is now before this court pursuant to 42 U.S.C. § 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Alexander Cole II ("Plaintiff") was 34 years old at the time of the hearing in November 2015. Tr. 766. He testified that he finished the eleventh grade, and was in special education for all of his classes since the first grade. Tr. 766-67. Plaintiff reports a history of childhood abuse. Tr. 714-15. He has no work history. Tr. 713, 757. Plaintiff appeared for the hearings in November 2015 and May 2016 via telephone from Airway Heights Correctional Facility. Tr. 744. He testified that he worked for three to six hours in the kitchen while incarcerated. Tr. 760. Prior to being incarcerated, Plaintiff reported that he was undergoing treatment for schizophrenia and did not use drugs except for marijuana. Tr. 759, 763-65. Plaintiff testified that he couldn't work because he has no work history, did not graduate from high school, has a criminal history, and has nerve damage in his back that prevents him from lifting over 50 pounds. Tr. 761-63.

Plaintiff alleges disability due to psychosis, antisocial personality disorder, depression, obsessive-compulsive disorder, nerve damage in his back, and ADHD. *See* Tr. 126, 681. As noted by the ALJ, and reflected in the longitudinal record, Plaintiff has an extensive history of polysubstance abuse, during which he displays "altered mental status, worsening psychosis, uncooperative behavior, and

significant deterioration in overall mental functioning." Tr. 682. Over the course of the record, Plaintiff has been diagnosed, at varying points in time, with adjustment disorder; depression; antisocial personality disorder; rule-out learning disorder; rule-out cognitive disorder; psychotic disorder NOS; substance use dependency/disorder (methamphetamine, alcohol, cannabis); obsessive compulsive disorder, and malingering. *See* Tr. 318, 640, 683-92, 1517, 1601, 1605-07, 1759. However, the record does not include any documented mental health treatment since mid- 2013, and jail records from February 2015 through March 2016 indicate Plaintiff was only treated for physical problems. *See* Tr. 1764, 2085, 2094-125, 2137-144.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

A finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction ("DAA"), the ALJ must determine whether the DAA is a material factor contributing to the disability. 20 C.F.R. § 416.935(a). It is the claimant's burden to prove substance addiction is not a contributing factor material to her disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since February 15, 2008, the application date. Tr. 675. At step two, the

ALJ found Plaintiff has the following severe impairments: Hepatitis C; learning

disorder vs. cognitive disorder vs. attention deficit hyperactivity disorder (ADHD);

psychosis NOS vs. depressive disorder, with psychotic features; anxiety-related

disorder (obsessive-compulsive disorder, posttraumatic features); personality

disorder; and drug and alcohol addiction.  Tr. 675.  At step three, the ALJ found

that Plaintiff's impairments, including the substance use disorders, meet Listing

12.09 with reference to sections 12.02, 12.03, 12.04, 12.06, and 12.08, of 20 C.F.R.

Part 404, Subpt. P, App'x 1.  Tr. 676.  However, the ALJ found that if Plaintiff

stopped the substance use, he would continue to have a severe impairment or

combination of impairments at step two, but the impairments would not meet or

medically equal the severity of a listed impairment at step three.  Tr. 679.  The ALJ

then determined that if the Plaintiff stopped the substance use, he would have the

RFC

> to perform medium work as defined in 20 CFR 416.967(c).  When the
> claimant is not abusing substances, he can perform simple, routine tasks and
> follow short, simple instructions.  The claimant can do work that needs little
> or no judgment and can perform simple duties that can be learned on-the-job
> in a short period.  The claimant requires a work environment with minimal
> supervisor contact.  (Minimal contact does not preclude all contact; rather, it
> means contact does not occur regularly.  Minimal contact also does not
> preclude simple and superficial exchanges and it does not preclude being in
> proximity to the supervisor).  The claimant can work in proximity to
> coworkers but not in a cooperative or team effort.  The claimant requires a
> work environment that requires no more than superficial interactions with
> coworkers.  The claimant requires a work environment that is predictable
> and with few work setting changes.  The claimant requires a work
> environment without public contact.

Tr. 680-81. At step four, the ALJ found that Plaintiff has no past relevant work. Tr. 693. At step five, the ALJ found that if Plaintiff stopped substance abuse, considering Plaintiff's age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform, such as industrial cleaner, hand packager, and production assembler. Tr. 693. Finally, the ALJ found that substance use disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use. Tr. 694. Thus, the ALJ concluded that Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date the application was filed through the date of the decision. Tr. 694.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 13. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ erred by finding substance use was a factor material to the finding of disability; and

2. Whether the ALJ erred by failing to develop the record.

## DISCUSSION

**A. DAA Analysis**

A social security claimant is not entitled to benefits "if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C), 1382c(a)(3)(J). Therefore, when there is medical evidence of drug or alcohol addiction, the ALJ must conduct a DAA analysis and determine whether drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations without DAA would still be disabling, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability. If the remaining limitations would not be disabling without DAA, then the claimant's substance abuse is material and benefits must be denied. *Parra v. Astrue*, 481 F.3d 742, 747-48 (9th Cir. 2007). "The claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability." *Id.* at 748.

Here, the ALJ found substance use disorder is a contributing factor material to the determination of disability. Tr. 673. Social Security Ruling ("SSR") 13-2p,

which explains the Commissioner's policy on "the analysis of substance abuse (or 'DAA') in a case involving co-occurring mental disorders;" directs, in pertinent part, that "[w]e will find that DAA is not material to the determination of disability and allow the claim if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorders would improve to the point of nondisability in the absence of DAA." SSR 13-2p (February 20, 2013), *available at* 2013 WL 621536 at *9. Plaintiff generally contends that Plaintiff's "longitudinal history does not establish that his mental disorders improve to the point of non-disability in the absence of DAA." [1] ECF No. 13 at 6-18.

As an initial matter, the Court notes that Plaintiff cites multiple individual treatment records as support for his argument that the "longitudinal record" does

---

[1] Plaintiff notes that "[s]ome of [Plaintiff's] providers have opined that his limitations would not resolve with sobriety." ECF No. 13 at 6 (citing Tr. 475, 640). Here, the ALJ extensively considered the opinions cited by Plaintiff and granted both of them little weight to the extent they reflect Plaintiff's functioning absent substance use. Tr. 690-92. Plaintiff fails to specifically raise or challenge the ALJ's consideration of any medical opinions; thus, to the extent Plaintiff seeks to rely on medical opinion evidence in support of his argument, the Court declines to address the issue. *See Carmickle*, 533 F.3d at 1161 n.2.

not support the ALJ's finding that DAA is material.  However, SSR 13-2p explicitly directs the ALJ to consider periods of abstinence from drug and alcohol use that are "long enough to allow the acute effects of drug and alcohol use to abate.  Especially in cases involving co-occurring mental disorders, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated."  SSR 13-2p at *12.  In support of his argument, Plaintiff cites his own reports of hallucinations and paranoia in late 2011;[2] however, these notes do not include objective findings as to whether Plaintiff was abusing substances at that time, and are thus of limited relevance in the DAA analysis.  ECF No. 13 at 6-8 (citing Tr. 1423, 1439-40, 1534); SSR 13-2p at *12.  Similarly, Plaintiff cites multiple treatment records from July 2012 through

---

[2] Plaintiff also cites discharge notes from October 2011, after Plaintiff "successfully" completed a chemical dependency treatment, indicating that he had "emotional, behavioral, and cognitive condition that requires intervention."  ECF No. 13 at 7 (citing Tr. 1291).  However, the Court's review of this discharge note also indicates that this "condition … does not significantly interfere with addiction treatment" and Plaintiff reported at the time that his mental health was stable.  Tr. 1291.

October 2014 to support his argument that the overall record does not establish that his mental disorders improve to the point of non-disability in the absence of DAA. ECF No. 13 at 12-14 (citing Tr. 1344, 1359, 1456-57, 1464, 1505, 1842, 2086, 2089-90). However, only a few of the records cited by Plaintiff (Tr. 1458, 1934), in July and August of 2012, were contemporaneous with negative drug screens; while the majority of the records either failed to indicate whether Plaintiff was using substances, or confirmed that he was *not* abstaining from substances. The Court is unpersuaded that these records confirm a period of abstinence that "long enough to allow the acute effects of drug and alcohol use to abate," such that the ALJ would be required to consider the evidence as directed by SSR 13-2p.

In large part, as noted by Defendant, Plaintiff relies on "a few key pieces of evidence" to support his argument that even in the absence of DAA his mental disorders did not improve to the point of nondisability. First, Plaintiff argues that the ALJ "erroneously found" there was no evidence of episodes of decompensation that are of extended duration during periods of sobriety;" because "decompensation from February to April 2012 occurred when he was sober, as evidenced by multiple clean drug screens throughout that period." ECF No. 13 at 8-11, 16. In February 2012, Plaintiff presented with "breakthrough psychotic symptoms despite clean UA" and Dr. Crystal Larimer observed that "years of meth use could now have caused permanent damage and psychosis." Tr. 1395. In

March 2012, Plaintiff was placed in a "stabilization bed" under the care of "detox staff" until he was discharged at his own insistence. Tr. 1381-91. In early April 2012, Plaintiff was taken to the hospital by mental health staff due to hallucinations, and his drug screen was normal. Tr. 2021, 2037. A few days later Plaintiff was discharged to inpatient treatment after continuing to decompensate; but after administering medication and not seeing symptoms, Plaintiff was discharged later in April, at which time he denied hallucinations, was noticeably clearer, and did not appear to be responding to internal stimuli. Tr. 1629, 1991, 1998. While not acknowledged by Plaintiff, the ALJ did consider these treatment records, specifically noting that Plaintiff was brought to the ER in February 2012 "secondary to suspected substance abuse;" was placed in a detox bed in March 2012; and was seen in the ER in April 2012 for "psychosis and delusions" at which time he admitted being noncompliant with medication and reported "ongoing alcohol use and recent methamphetamine use." Tr. 677. Moreover, the ALJ noted that following his inpatient treatment in April 2012, Plaintiff "was described as having a bright affect, with clear thoughts and no signs of irritability or active hallucinations." Tr. 683 (citing Tr. 1629). Plaintiff acknowledges that he appeared stable for his next few appointments, and even expressed interest in obtaining employment. ECF No. 13 at 11 (citing Tr. 1493-1513). In May 2012, as noted by the ALJ, Dr. Larimer observed "there are extensive records documenting

[Plaintiff's] psychosis while using drugs and then psychosis disappears when he is sober." [3] Tr. 677 (citing Tr. 1515). Overall, despite selected medical evidence that

---

[3] Plaintiff contends the ALJ "failed to reconcile" this finding by Dr. Larimer with her contemporaneous finding in May 2012 that Plaintiff's "presentation since re-entering services this last time, is different" and since his last relapse "patient showed a long lasting psychosis that continued to persist;" and her notes in February 2012 that Plaintiff presented with "breakthrough psychotic seizures despite a clean UA" and "years of meth could have caused permanent damage and psychosis." ECF No.13 at 16 (citing Tr. 1395, 1515). However, in the same May 2012 record cited by Plaintiff, during a period of documented sobriety and compliance with medication, Dr. Larimer notes that Plaintiff was alert, cooperative, oriented, with coherent speech and no reports of hallucinations, paranoia or delusions. Tr. 1517, 1978. Dr. Larimer additionally notes that Plaintiff's symptoms resolve after he is sober for a period of time; and Plaintiff did not report hallucinations when not under the influence of drugs. Tr. 1515. Based on this evidence, and despite evidence that could be considered more favorable to Plaintiff, the Court finds the ALJ did not err in the consideration of Dr. Larimer's treatment notes. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

may be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to find that no evidence of any episodes of decompensation that are of extended duration during periods of sobriety, including February through May 2012; and conclude that when Plaintiff "abstains from substances, especially for an extended period, his mental functioning substantially improves." Tr. 680, 682; *see Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld).

Second, Plaintiff cites a portion of Dr. Kenneth Asher's expert testimony to support his argument that the longitudinal record does not establish that Plaintiff's mental disorders improve to the point of non-disability absent DAA. ECF No. 13 at 15-17. As noted by Plaintiff, Dr. Asher testified that "we don't have a clear way to separate out the effect of the substance abuse and dependence from whatever problems really would be severe." Tr. 797. However, the ALJ specifically acknowledged this testimony, and noted that "Dr. Asher goes on to opine that [Plaintiff's] mental functioning appeared to be highly significantly improved or much better when his substance use was absent or when he had not been using for a while. Indeed, as documented [in the decision] the record is replete with examples showing that, when clean and sober, [Plaintiff] has stable mood and affect, cooperative behavior, and mild or no signs of psychosis or OCD behavior." Tr. 689, 801, 1515-17, 1674, 1758, 2087-88, 2089-90, 2108, 2110, 2119-20, 2124-

25. Thus, the ALJ granted Dr. Asher's opinion only "some weight" and, based on the cited independent evidence in the record, found that "contrary to Dr. Asher's opinion, there is sufficient information to assess [Plaintiff's] functioning during periods of substance abuse versus during periods of sobriety." Tr. 689. Plaintiff argues that the ALJ improperly rejected Dr. Asher's opinion based on evidence that Plaintiff is stable when not abusing substances, because his "presentation from February to April 2012 is a glaring counterexample that remains unaddressed by the ALJ." ECF No. 13 at 17. However, as discussed in detail above, the ALJ properly considered medical evidence from that time period as part of the DAA analysis. Moreover, the overall evidence is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch*, 400 F.3d at 679. Thus, the Court finds the ALJ properly rejected Dr. Asher's opinion that there was no "clear way to separate out the effect of substance abuse," because it was not consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (non-examining doctor's opinion may constitute substantial evidence if it is consistent with other independent evidence in the record).

Third, Plaintiff contends the ALJ erroneously relied on Plaintiff's "improved mental functioning during periods of sobriety as evidenced in his jail records" as part of the DAA analysis. ECF No. 13 at 17 (citing Tr. 684). In support of this

finding, the ALJ noted that after his incarceration in January 2015, Plaintiff did not require mental health treatment and repeatedly declined mental health services because he did not feel he had mental problems when he was clean and sober. Tr. 684 (citing Tr. 2087-88, 2089-90, 2108, 2110, 2119-20, 2124-25). Plaintiff argues that Plaintiff's "refusal of mental health services and ability to live in the general population is not clear evidence that he is not experiencing mental health symptoms which would interfere with his ability to work;" because Plaintiff has previously been observed to have poor insight into his condition (Tr. 1439, 1517), and his mental health was not "thoroughly assessed" while he was incarcerated. ECF No. 13 at 17. However, contrary to Plaintiff's argument, the ALJ did not rely solely on Plaintiff's self-assessment of his mental health status. Rather, records cited by the ALJ from period of Plaintiff's incarceration also include notes from treating providers that Plaintiff was alert and oriented, cooperative, had normal affect, and relaxed appearance. Tr. 684, 2087-88, 2105, 2108, 2110, 2125. Moreover, the ALJ noted Plaintiff's "work activity in jail is further evidence of improved mental functioning when clean and sober," which included: working in the kitchen, washing dishes, and serving food for three to six hours, five days a week. Tr. 684 (citing Tr. 2111). For these reasons, the ALJ reasonably relied on Plaintiff's improved mental functioning, and his ability to work, during the period of sobriety while he was incarcerated, as evidence in support of the finding that

1   Plaintiff's mental condition would improve to the point of nondisability absent

2   substance abuse.

3        As a final matter, after an exhaustive review of the longitudinal record, the

4   Court notes that Plaintiff failed to identify or challenge additional evidence cited

5   by the ALJ to support the DAA materiality finding, including: an August 2010

6   opinion that Plaintiff's symptoms are directly related to substance use;  benign

7   mental status exam findings during an incarceration in April 2014; and an

8   evaluation in October 2014 wherein Plaintiff was diagnosed with only rule-out

9   learning disorder, and Plaintiff reported he was "clean," felt better psychologically,

10  and his primary barrier to employment was physical, rather than mental health,

11  problems.  Tr. 682-84 (citing Tr. 1605, 2087-88, 2090).  Based on the foregoing,

12  the conclusion that Plaintiff's co-occurring mental disorders improved to the point

13  of nondisability in the absence of substance use, as directed by SSR 13-2p, was

14  supported by substantial evidence.  Thus, the ALJ did not err in finding Plaintiff's

15  "substance use disorder is a contributing factor material to the determination of

16  disability because [Plaintiff] would not be disabled if he stopped the substance

17  use." Tr. 694.

18  **B. Duty to Develop the Record**

19       "An ALJ's duty to develop the record is triggered only when there is

20  ambiguous evidence or when the record is inadequate to allow for proper

evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff contends that the "ALJ failed to fully develop the record by failing to order intelligence testing." ECF No. 13 at 18-20. In support of this argument, Plaintiff cites records diagnosing rule-out cognitive and/or learning disorder, and observing low intellectual functioning. ECF No. 13 at 19-20 (citing Tr. 1439, 1517, 2090). Additionally, Plaintiff notes that at the hearing his representative requested intelligence testing, and testing was "recommended" by the ALJ's medical expert. ECF No. 13 at 18 (citing Tr. 814).

Here, at step two, the ALJ found Plaintiff's severe impairments include "learning disorder vs. cognitive disorder vs. attention deficit hyperactivity disorder." Tr. 675, 679. However, the ALJ specifically found that that a consultative evaluation was not necessary, as follows:

> Because [Plaintiff's] substance use disorder has been in remission for greater [than] one year, I find that I have sufficient evidence to assess his functioning with or without substance use. Additionally, although Dr. Asher recommended testing to assess whether [Plaintiff] has a learning disorder or a cognitive disorder, I find the record contains sufficient mental health records. Moreover, my mental residual functional capacity, absent substance use, already accounts for any cognitive deficits from a learning disorder vs. cognitive disorder. In sum, the record lacks objective medical evidence that [Plaintiff] suffers from conditions that have not been addressed in this decision. Accordingly, I find the longitudinal record contains sufficient medical evidence of [Plaintiff's] impairment and decline to request a consultative examination.

Tr. 672. Plaintiff fails to specifically address or challenge this finding; nor does he identify any limitations related to his alleged cognitive and/or learning disorders

that were not properly accounted for in the assessed RFC.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing). Moreover, the Court notes that multiple medical opinions considered Plaintiff's cognitive abilities, were granted significant weight by the ALJ (Tr. 686-87), and the assessed limitations from those opinions were properly incorporated into the RFC finding Plaintiff can perform simple, routine tasks and follow short, simple instructions that can be learned in a short period (Tr. 680).  Finally, as noted by Defendant, it is Plaintiff's duty to prove he is disabled; and this burden cannot be shifted to the ALJ simply by virtue of the ALJ's duty to develop the record.  *See Mayes*, 276 F.3d at 459-60.  The ALJ did not find, and the Court is unable to discern, any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole.  *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). Thus, the ALJ did not err in failing to further develop the record in this case.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ's finding that Plaintiff's substance use was material to the determination of disability was supported by

substantial evidence; and the ALJ did not err in his duty to develop the record. After review the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** May 22, 2018.

_____*s/Fred Van Sickle*_____
Fred Van Sickle
Senior United States District Judge